**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KELLY MENDENHALL, et al., | ) | CASE NO. 5:09 cv 00742 |
| | ) | |
| | ) | |
| Plaintiffs, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| AKRON METROPOLITAN | ) | MEMORANDUM OPINION, |
| HOUSING AUTHORITY, et al., | ) | INCLUDING |
| | ) | FINDINGS OF FACT AND |
| Defendants. | ) | CONCLUSIONS OF LAW |
| | ) | |

This matter comes before the Court for a trial to the Court on the merits in a case wherein Plaintiffs Kelly Mendenhall, et al., seek a permanent injunction enjoining Defendants Akron Metropolitan Housing Authority, et al., from allegedly depriving Plaintiffs of political and civil rights in violation of 42 U.S.C. § 1983 and the First Amendment of the United States Constitution.  Plaintiffs also seek to recover damages, attorney's fees, and costs. The Court finds in favor of Defendants.

## I.  PROCEDURAL HISTORY

On April 1, 2009, plaintiffs Kelly Mendenhall and Change Akron Now (collectively, "Plaintiffs") filed a complaint against defendants Akron Metropolitan Housing Authority and its Executive Director, Anthony O'Leary (collectively, "Defendants"), along with

a motion seeking a temporary restraining order. (Doc. No. 2.) After an initial discussion with counsel shortly after the lawsuit was filed, the Court declined to issue a TRO and converted the motion into one seeking a preliminary injunction.

Plaintiffs filed an amended complaint on April 3, 2009, and the parties submitted briefs in support of their respective positions. The Court conducted a full evidentiary hearing on the motion for preliminary injunction on April 3, 2009, during which both sides offered live witness testimony and admitted documentary exhibits. After carefully considering the issues raised in the motion, the Court held that Plaintiffs failed to meet the burden necessary to obtain preliminary injunctive relief. (Doc. No. 10.)

On July 8, 2009, the parties filed a joint stipulation of fact, supplementing the evidentiary record established during the preliminary injunction hearing. (Doc. No. 17.) On October 14, 2009, the parties submitted a joint stipulated order consenting to the Court's entry of final judgment based upon the evidence received during the full evidentiary hearing held on April 3, 2009, and the joint stipulations of fact submitted on July 8, 2009, (Doc. No. 23) which the Court granted the same day.[1] (Doc. No. 24.) Against this backdrop, this case is ripe for adjudication on the merits.

## II. FINDINGS OF FACT

Plaintiff Change Akron Now ("CAN") is a political action committee organized under the laws of Ohio. CAN participated in a petition drive with the stated goal of collecting a sufficient number of signatures to place the question of whether to recall Akron Mayor Donald Plusquellic on the ballot for a special election. Plaintiff Kelly Mendenhall ("Mendenhall") is a

---

[1] Pursuant to Rule 65(a)(2), the Court may advance the trial on the merits and consolidate it with the hearing before or after beginning the hearing on a motion for preliminary injunction, but the Court must preserve any party's right to a jury trial. Fed. R. Civ. P. 65(a)(2). The parties have waived their rights to a jury trial. (Doc. No. 23, p. 2.)

registered voter in Akron, Ohio, and a volunteer who worked to support CAN's petition drive. To get the recall question onto a special election ballot, pursuant to Akron city ordinance, CAN was required to obtain 3,200 valid signatures from registered Akron voters. The deadline for submitting the signatures was April 10, 2009.

Defendant Akron Metropolitan Housing Authority ("AMHA") is a public agency that receives government funds. The parties stipulated that AMHA is an arm of the state. Defendant Anthony O'Leary is its Executive Director.[2] AMHA's purpose is the provision of safe and affordable housing to Summit County residents who meet established guidelines. In furtherance of this mission, AMHA owns and operates numerous properties throughout the county, including approximately thirteen high-rise towers.

At the April 3, 2009 evidentiary hearing on preliminary injunction, Defendants presented testimony from Pamela Hawkins, AMHA's Deputy Director of Housing Operations. Hawkins testified without contradiction that, pursuant to AMHA policy, door-to-door solicitation is prohibited at the residential towers owned and operated by the agency. She explained that the reason for the blanket prohibition on door-to-door solicitation is to protect the safety of the residents and prevent their exploitation. Hawkins testified that the majority of residents at the high-rises owned by AMHA are elderly or disabled and, as such, are subject to heightened concerns over issues like crime prevention, manipulation, and abuse.

On March 29, 2009, Mendenhall was soliciting signatures for the recall petition at an apartment complex known as the Saferstein Towers, one of the high-rises owned and operated

---

[2] The parties have further stipulated that Defendant O'Leary, in his personal capacity, has donated money to Citizens For Akron, an organization that opposed the recall of Mayor Plusquellic.

3

by AMHA.[3] Mendenhall testified that, while she was obtaining the signature of one resident in the building's lobby, two individuals approached and asked her to leave the property. Mendenhall did not state who it was that asked her to leave, and it is not known whether those individuals were residents, employees of AMHA, or otherwise unaffiliated with the Saferstein property. On March 31, 2009, Mendenhall telephoned AMHA and was told that political activity on AMHA property was permitted only upon compliance with written policy, and that door-to-door petitioning was absolutely prohibited.[4] Mendenhall was informed, however, of AMHA's procedures for obtaining permission to make a presentation to residents regarding political issues like the recall petition.[5] Mendenhall testified that she did not seek to conduct such a presentation at any AMHA facility because the petition drive "d[id]n't have time for something like that."

Plaintiffs also presented testimony from Brenda St. Clair, another CAN volunteer, registered voter, and Akron resident. St. Clair, like Mendenhall, does not reside in a property owned or operated by AMHA.[6] St. Clair testified that on March 11, 2009, while she was working

---

[3] Although the record is not entirely clear on this point, there apparently are two towers at the Saferstein complex, known as Saferstein I and Saferstein II. It appears that Mendenhall's petitioning efforts took place at Saferstein II. This fact has no bearing on the analysis.

[4] Defendants introduced a copy of this policy, and the Court heard a good deal of testimony and argument about it. Plaintiffs concede, however, that they do not want to conduct what is known under the policy as an "Issue Oriented Presentation," but that their only complaint is with AMHA's refusal to allow them to go door-to-door to pass out literature and solicit petition signatures. Those activities – door-to-door solicitation and leafleting – do not implicate AMHA's written policy regarding political activity, which does not permit any type of door-to-door activity. Rather, Plaintiffs' challenges implicate AMHA's entirely separate policy of banning all door-to-door solicitation in residential high-rises. The political activity policy is therefore irrelevant and will be treated as such.

[5] Mendenhall testified that she did not pursue such a meeting due to the time constraints facing CAN's recall efforts. There was some testimony that CAN's issue was presented on an expedited basis to one of the resident councils, and the residents decided that they did not wish to hear a presentation from CAN. In any event, Plaintiffs' counsel conceded at the hearing that Plaintiffs do not wish to make a presentation of this kind, which the evidence established would take place in a central meeting location. Rather, Plaintiffs sole concern is the ability to go door-to-door inside the high-rises. Accordingly, CAN's ability to make a centralized presentation on a specific issue like the recall petition is not at issue in this litigation.

[6] Plaintiffs' amended complaint names a Jane Doe plaintiff, purportedly living at an AMHA facility in Akron. Mendenhall is not an AMHA resident, nor has there been any assertion that any member of CAN is an AMHA resident. Plaintiffs fail to provide any authority supporting the conferral of constitutional standing on them to permit assertion of the First Amendment rights of unidentified individuals. There was, moreover, no testimony establishing

4

on the petition drive, she went to a high-rise property located on Buchtel Avenue in Akron. "Buchtel," as it is known, is owned and operated by AMHA. St. Clair noticed a sign stating that no solicitation was allowed on the premises. St. Clair testified that she was invited inside by a resident, and thus gained entrance to the building and began knocking on doors. She knocked on several doors, but according to her testimony, did not receive any responses. Approximately fifteen minutes into this effort, St. Clair was noticed by a man and a woman, who asked her to leave, which she did. Like Mendenhall, St. Clair did not know or inquire as to whether the individuals that asked her to leave were residents of the facility, employees, or neither. She did not return to Buchtel.

St. Clair also attempted to distribute literature and solicit signatures at another AMHA high-rise on Cotter Avenue, referred to as "Cotter." She testified that she told a woman who was outside on her balcony about the petition drive and was invited inside. She entered the building, but the woman who invited her did not come down to meet her. St. Clair did not attempt to go up and find the woman's apartment. Instead, after fewer than five minutes on the premises and without being asked, she left the building.

## III.  CONCLUSIONS OF LAW

### A.     Standard of Review

The Court applies a five-part test when deciding to issue a permanent injunction: (1) whether the movant demonstrates actual success on the merits; (2) whether there is a substantial risk of continuing irreparable injury to the movant without the injunction; (3) whether the injunction would cause substantial harm to the nonmoving party; (4) whether the injunction

---

that any individual AMHA resident (identified or not) wanted to receive information via door-to-door solicitation but has been prevented from doing so. The Court, therefore, has not considered it.

serves the public interest; and (5) whether the movant lacks an adequate remedy at law. *United States v. Szoka*, 260 F.3d 516, 523 (6th Cir. 2001); *see also Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").

B.     **Permanent Injunction**

Plaintiffs bring claims for violations of the First Amendment and 42 U.S.C. § 1983. Section 1983 establishes a federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal law. 42 U.S.C. § 1983; *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir. 1996). A claim under § 1983 requires that the plaintiff plead and prove: (1) a deprivation of rights secured by the Constitution and laws of the United States; and (2) that the defendant deprived him of this federal right "under color of law." *Jones v. Duncan*, 840 F.2d 359, 361-62 (6th Cir. 1988) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)). Because the § 1983 claim necessarily depends upon the existence of a First Amendment violation, the merits analysis for purposes of deciding whether to grant a permanent injunction collapses into an evaluation of the constitutional claim.

The First Amendment protects the right to be free from government abridgement of speech. U.S. CONST. amend. I; *Ysursa v. Pocatello Educ. Ass'n*, 129 S.Ct. 1093, 1098 (2009). In evaluating a First Amendment claim like that raised by Plaintiffs, the Court determines (1) whether the speech is constitutionally protected; (2) the nature of the forum where the speech is to occur; and (3) whether the justification presented by the governmental actor

6

satisfies the applicable standard. *Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 797 (1985).

> **1.  Plaintiffs' Speech is Protected by the First Amendment**

Solicitation of petition signatures and distribution of political literature are recognized forms of speech entitled to First Amendment protection. *United States v. Kokinda*, 497 U.S. 720, 725 (1990); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995). About that, there is no dispute.

> **2.  The High-Rises Owned by AMHA are Non-public Fora**

However, it is well-established that the government need not permit all forms of speech on property under its ownership and control. *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992) (citing *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981); *Greer v. Spock*, 424 U.S. 828 (1976)). According to the Supreme Court, "[t]he existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 44 (1983). In *Perry*, the Supreme Court established a three-category forum analysis for classifying different types of public property, which in turn is used to determine the level of scrutiny to which restrictions on speech are subject. It is undisputed that, in this case, the properties to which Plaintiffs seek access fall into *Perry*'s third category, as nonpublic fora.

AMHA owns the approximately thirteen high-rise towers, including the three buildings (Saferstein II, Buchtel, and Cotter) where Plaintiffs attempted to obtain petition signatures before being asked to leave, as well as numerous other properties throughout the City of Akron. As a government agency, AMHA's purpose in owning these properties is to fulfill its

7

mandate of providing safe and affordable housing to eligible low-income residents. The apartments in these buildings are rented to private citizens and thus serve as private residences. As the Court in *Perry* explained,

> Public property which is not by tradition or designation a forum for public communication is governed by different standards. We have recognized that the First Amendment does not guarantee access to property simply because it is owned or controlled by the government. In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view. As we have stated on several occasions, the State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.

*Perry*, 460 U.S. at 45-46 (internal quotation marks, citations, and footnotes omitted). Public housing facilities like those owned and operated by AMHA are considered nonpublic fora. *de la O v. Housing Auth. of City of El Paso, Tex.*, 417 F.3d 495, 503-04 (5th Cir.), *cert. denied*, 546 U.S. 1062 (2005) (citing *Daniel v. City of Tampa, Fla.*, 38 F.3d 546, 550 (11th Cir. 1994); *Crowder v. Housing Auth. of City of Atlanta*, 990 F.2d 586, 591 (11th Cir. 1993); *Daily v. New York Housing Auth.*, 221 F. Supp. 2d 390, 399 (S.D.N.Y. 2002)).

### 3. AMHA's Blanket Prohibition on Door-to-door Solicitation at the Towers is a Reasonable and Viewpoint-Neutral Regulation of Speech

In a nonpublic forum, the state is permitted to restrict protected First Amendment speech as long as it does so in a way that is reasonable and viewpoint-neutral. *Perry*, 460 U.S. at 46. Plaintiffs offered no evidence whatsoever even suggesting that Defendants engaged in any viewpoint discrimination in its application of the ban on door-to-door solicitation. There was no testimony that anyone is permitted to go door-to-door in the high-rises owned by AMHA under

any circumstances.[7] Nor, more specifically, was there any evidence that AMHA favored one political viewpoint over another in applying this policy. Thus, Plaintiffs' only challenge – as their counsel conceded at the evidentiary hearing – is to the reasonableness of AMHA's ban on door-to-door solicitation, pursuant to which Mendenhall and St. Clair were asked to leave the building where they were attempting to solicit signatures. The policy will survive scrutiny as long as it is "reasonable in light of the purpose served by the forum." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 107 (2001).

It is crucial to note that what Plaintiffs were precluded from doing, and what they seek an injunction permitting them to do, is knocking on doors of individual apartments located in residential high-rise buildings to solicit petition signatures and distribute literature regarding the recall campaign. There was no evidence that AMHA permits anyone access to these properties to go door-to-door for any reason, but instead has established a blanket prohibition on such conduct. AMHA's reason for prohibiting door-to-door solicitation is to protect the safety of residents. According to the testimony, many of the residents at these high-rise buildings where the door-to-door solicitation ban applies are elderly and/or disabled. The case law firmly establishes this as a reasonable rationale for restricting First Amendment speech. *de la O*, 417 F.3d at 504 (citing *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986) ("government's proffered interest – crime prevention – is obviously a weighty one")).[8]

---

[7] Plaintiffs submitted a newspaper article indicating that rock musician and Akron native Chrissie Hynde had campaigned on behalf of Mayor Plusquellic at a property known as Cascade Valley, and intimated that such campaigning may have been of the door-to-door variety that Plaintiffs seek to conduct. However, Defendants submitted uncontroverted evidence that the Cascade Valley facilities are not owned or operated by AMHA, and thus the newspaper article is not evidence of AMHA engaging in viewpoint discrimination. Moreover, there is no evidence that the non-solicitation policy applies at Cascade Valley, and evidence pertaining to Cascade Valley thus has no conceivable bearing on Plaintiffs' challenge to that policy.

[8] Notably, Plaintiffs did not provide any contrary authority. They failed to cite a single case in the nonpublic forum context, let alone one that even arguably supports their position. Indeed, their brief focused on a standard –

Protecting the safety of residents and preventing crime are undeniably compelling governmental interests. Those concerns are particularly heightened in this case, as many of the residents of the properties at issue are elderly and infirm, and such individuals are particularly susceptible to crime, both violent and non-violent. The elderly and the disabled are, moreover, often uniquely ill-suited to defending themselves against such advances, both physically (as in the case of the violent attacker) and mentally (as in the case of the financial huckster spinning Madoff-like tales of riches to be had without any risk). These individuals must rely on others to protect them, and AMHA's policy regarding door-to-door solicitation does just that. As such, under the less-exacting standard applicable to nonpublic fora, there can be no question that AMHA's prohibition of door-to-door solicitation is reasonable in light of the purpose of the forum.[9]

"When examining the reasonableness of restrictions on speech, the existence of alternative channels of communication is integral." *Id.* (citation omitted). Although Plaintiffs contended that the only way to get their message to voters who live in AMHA's high-rises is to knock on individual doors, they failed to provide any compelling evidence to support this assertion. On the contrary, the evidence established that Plaintiffs would be permitted to solicit signatures and distribute literature on the sidewalks outside the buildings or in the parking lots. They could leave their literature with building employees for placement in the facility's resource room. They also could have sought permission to make an issue presentation regarding the recall petition, but conceded that they did not wish to do so. And, of course, they could mail the literature to residents and include instructions on how to contact the campaign to sign a petition.

---

strict scrutiny – they conceded was inapplicable. At bottom, Plaintiffs did not provide any authority for their contention that AMHA's non-solicitation policy is unreasonable, and therefore fell far short of meeting their burden.

[9] While the parties stipulated that Executive Director O'Leary, in his personal capacity, contributed to an organization that opposed the recall of Mayor Plusquellic, Plaintiffs offered no evidence that O'Leary's personal donation was in any way related to the ban on Plaintiffs' solicitation.

Under these circumstances, with a rather vast array of alternatives available to them, Plaintiffs have fallen far short of meeting their burden of convincing the Court that the prohibition of door-to-door solicitation is unreasonable in light of the purposes served by the residences.

The sole restriction challenged by Plaintiffs is AMHA's blanket ban on door-to-door solicitation. That policy applies to AMHA's high-rise towers, which are occupied largely by elderly and disabled individuals. Its purpose is to protect the safety and wellbeing of residents, which is consistent with AMHA's essential mission, which involves the provision of safe and affordable housing to Summit County residents. The Court finds that the policy at issue is viewpoint-neutral and reasonable in light of the purpose served by the public housing facilities to which Plaintiffs seek access. Thus, Plaintiffs' challenge cannot succeed, as Plaintiffs have not demonstrated a First Amendment violation.

Having failed to demonstrate a First Amendment violation, Plaintiffs claim is without merit. Accordingly, the Court finds that Plaintiffs have failed to meet their burden of proving entitlement to injunctive relief. The motion is denied.

## IV.  CONCLUSION

Finding that Plaintiffs have failed to establish success on the merits, the Court finds in favor of Defendants as to all claims in Plaintiffs' Amended Complaint.

**IT IS SO ORDERED**.

Dated: October 29, 2009

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**